(64 Misc. Rep. 191.)

WHITNEY v. PATRICK, Village President, et al.

(Supreme Court, Special Term, Saratoga County. July, 1909.)

1. HEALTH (§ 3*)—BOARD OF HEALTH—TERM OF OFFICE.

The history of public health legislation shows that the Legislature intended that, after the organization of the boards of health under Laws 1893, p. 1495, c. 661, the term of office of the subsequent members should be three years.

[Ed. Note.—For other cases, see Health, Dec. Dig. § 3.*]

2. OFFICERS (§ 52*)—TERM OF OFFICE—TIME OF BEGINNING.

It is only where the statute fails to prescribe when term of office shall begin that it begins on election or appointment.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 72; Dec. Dig. § 52.*]

3. OFFICERS (§ 52*)—TERM OF OFFICE—TIME OF BEGINNING.

Where the time when term of office shall end is provided by statute, the new term commences when the old one ends, and one who holds beyond such period merely holds over because no successor has been appointed.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 72; Dec. Dig. § 52.*]

4. HEALTH (§ 3*)—BOARD OF HEALTH—POWER TO MAKE APPOINTMENTS.

An outgoing board of trustees of the village of Mechanicville had power, at its first meeting after the annual election, not only to fill a vacancy on the board of health caused by expiration of a member's term, but to increase the number of members and appoint incumbents thereto, and the right to do so was not limited to the new board of trustees, whose term had not begun.

[Ed. Note.—For other cases, see Health, Dec. Dig. § 3.*]

5. OFFICERS (§ 80*)—TITLE TO OFFICE—INQUIRY INTO—FORM OF ACTION.

Title to office may be inquired into in a taxpayer's action to restrain waste of public funds, where depending wholly on the construction of a statute and the examination of indisputable records.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 111; Dec. Dig. § 80.*]

6. MUNICIPAL CORPORATIONS (§ 995*)—WASTE OF PUBLIC FUNDS—RIGHT OF TAXPAYER TO SUE.

Under General Municipal Law (Consol. Laws, c. 24 [Laws 1909, c. 29]) § 51, authorizing an action by a taxpayer against an officer, agent, or other person acting for a municipal corporation, to prevent waste or injury to any property, funds, or estate of a municipality, a taxpayer may sue

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to restrain waste of public funds because an individual assumes to act illegally in an official capacity.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2163; Dec. Dig. § 995.*]

Action by George H. Whitney against Albert H. Patrick, as President of the Village of Mechanicville, and others. Finding for plaintiff.

Edgar T. Brackett and Wm. S. Ostrander, for plaintiff.
Robert W. Fisher and John Slade, for defendants.

HOUGHTON, J. The plaintiff brings this action as a taxpayer of the village of Mechanicville to restrain expenditures by an alleged board of health of that village, on the ground that such board is illegally constituted and assumes to act without authority of law.

A board of health of the village of Mechanicville had been appointed pursuant to the requirements of chapter 661, p. 1495, of the Laws of 1893; and, when chapter 49 of the Laws of 1909 (Consol. Laws, c. 45), went into effect, on the 17th day of February, the members of the board were Messrs. Cassidy, Bassett, and Lenhardt. According to the provisions of the special charter of the village of Mechanicville, the annual election of trustees takes place on the first Wednesday of March, which in the present year fell on the 3d day of that month. The old board of trustees held its first meeting after such election on the 8th day of March last, and voted to increase the number of members of the board of health from three, as it had formerly been, to five members, and appointed as such new members Messrs. Clarke and Snell, and appointed William L. Palmatier to succeed Lenhardt, whose term of office was alleged to have expired. Snell resigned, and, on the 15th day of March, Caron was appointed in his place. On the 16th day of March, the new board of trustees held its first meeting and voted to increase the membership of the board of health to seven members, and appointed Messrs. Hickey and Finnigan as such new members, and reappointed Lenhardt, on the theory that his term had not expired when the old board of trustees appointed Palmatier in his place. It therefore transpires that eight men claim to be members of the board of health of the village of Mechanicville, and Cassidy, Lenhardt, Finnigan, and Hickey have met and appointed health inspectors and incurred liability against the village which the plaintiff says they have no right to do.

The plaintiff contends that the board of health consists of five members only, and that they are Bassett, Cassidy, Palmatier, Clarke, and Caron. The defendants admit that the increase of the board to seven members was ineffectual, but insist that it consists of Bassett, Cassidy, Lenhardt, Finnigan, and Hickey, and that the four men who assume to act have the right so to do. The legality of the appointments of the members of the board of health depends upon whether the old or outgoing board had the right of appointment or whether that right was vested in the new or incoming board of trustees. If the outgoing board of trustees, at its first meeting after the annual election on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

March 3d, had·the right to increase the number of members of the board of health and make appointments, and if Lenhardt's term had expired, so that an·appointment in his place was properly made, then what may be termed the "Bassett board," including Cassidy, who concededly held over, is·the legal board of health of the village. On the other hand, if the outgoing had no power to appoint or increase the number, and such power was vested only in the incoming or new board, then its appointees, which may be termed the "Cassidy board," including Bassett, who held over, constitute the legal board of health.

Section 20, c. 49, of the Laws of 1909 is a re-enactment, word for word, so far as village boards of health are concerned, of section 20, c. 661, of the Laws of 1893, as amended from time to time, and is surprisingly indefinite in view of the fact that it is fresh from the hands of the board of statutory consolidation. The length of the term of office of a member of the board of health is not definitely stated, and the time when it begins and ends is left in doubt, and which board of trustees, whether the outgoing or the incoming, has the right of appointment at its first meeting after the annual election, is not specifically stated. I do not think there is any doubt that the Legislature intended that, after the organization of the boards of health under the act of 1893, the term of office of the subsequent members should be three years. The history of public health legislation shows this. Villages throughout the state which had not already established boards of health were directed by chapter 270 of the Laws of 1885 so to do. The language of that act is as follows:

"And it shall be the duty of the trustees of every incorporated village in this state to appoint, once in each year, a board of health of such village,' to consist of not less than three nor more than seven members (who are not village trustees), who shall hold office for one year or until their successors shall have been appointed."·

The act of 1893 (as amended by Laws 1906, p. 544, c. 253, § 1) provided as follows:

"In villages the board [of health] shall consist of not less than three nor more than seven persons, not trustees of the village, who shall be appointed by the board of trustees at the first meeting of the board of trustees of such village after the next annual election of the village: the members of said board of health shall at their first meeting divide themselves by lot into three classes, whose terms of office shall expire respectively in one, two and three years from the annual election held prior to their appointment; and in the case of an increase in the membership of such board, as hereinafter provided, there shall be a like apportionment by lot, of the added members, in respect to their terms of office, at the first meeting of said board after such increase occurs, whereby the whole number of terms expiring annually shall be as nearly equal as possible." Laws 1893, p. 1501, c. 661, § 20, as amended by Laws 1906, p. 544, c. 253, § 1.

The act of 1893 became a law on May 9th of that year. It did not direct the immediate reorganization of the boards of health throughout the state, but did prescribe that, immediately following the next annual election in each village in the state, not necessarily or probably held on the same day of the month, or in the same month even, annual appointments of boards of health should cease, and wholly new boards should be appointed, and those appointed should cast lots to determine

who should serve one, two, and three years. Thus one-year boards
were done away with, and a new scheme of appointment was inaugu-
rated. Manifestly, when the term of the one-year member expired,
his successor was to be appointed, not for one year, but for three;
and, when the term of the two-year member expired, his successor was
to be appointed for three years. In this way experienced men could
be kept in the board, for the term of only a part of the board would
expire annually, and thus the public health would be protected in a
business rather than in a political way.

This interpretation of the law is not disputed, and appointments
were made after this manner, and Lenhardt was appointed for three
years in 1906. As to him and his successor, the question turns on
when his term expired. He was appointed March 20, 1906; and the
defendants claim his term did not expire until that date in 1909, and,
hence, that there was no vacancy when the board of trustees assumed
to appoint Palmatier as his successor on the 8th day of March. It will
be observed that the law of 1893, which reorganized boards of health
throughout the state, provided that the terms of office of members of
the boards directed to be appointed after the next succeeding annual
election should be for one, two, and three years from the date of such
annual election. Assuming that the annual election in the village of
Mechanicville in the year 1894 fell on the 3d day of March, and that
three members of the board of health were appointed, the term of
office of the man who drew the one-year term would have expired on
the 3d day of March, 1895, and his successor would have begun his
term of office on the day of the expiration of the term of his prede-
cessor.

It is only where the statute fails to prescribe the time when the term
of office shall begin that it begins on the election or appointment. 29
Cyc. 1398. The statute of 1893 expressly states that the terms of the
first members of the board of health appointed under its provisions
shall expire, respectively, in one, two, and three years from the an-
nual election held prior to their appointment. Where a statute pro-
vides the time when a term shall end, the new term commences when
the old one ends; and one who holds beyond such period merely holds
over because no successor has been appointed. People ex rel. Mason
v. McClave, 99 N. Y. 83, 1 N. E. 235. The statute of 1893 prescribed
that, after the appointment of the first board, the appointment of suc-
cessors should be made immediately after the annual elections held in
various villages. Very probably there was an interval of time from
the ending of the term to the first meeting after the annual election.
It might well happen that the term of a member of the board of health
should expire before his successor could be appointed, and that the
incumbent members necessarily held over beyond their terms until the
first meeting of the board of trustees after the annual election. This,
however, did not prevent the ending of the term as provided by the
statute, which was one, two, or three years, as the case might be, from
the preceding annual election. When Lenhardt was appointed in 1906,
he, therefore, was appointed for three years from the annual election
of that year, and his term had, therefore, necessarily expired on the
8th day of March, 1909. If the outgoing board of trustees, at its first

meeting after the annual election of 1909, had any power to appoint them, Lenhardt's term having expired, the appointment of Palmatier as his successor was valid, and the subsequent appointment of Lenhardt by the new board of trustees was invalid.

It seems to me that the outgoing board had power, not only to fill the vacancy caused by the expiration of Lenhardt's term, but to increase the number of members of the board of health and appoint incumbents thereto. The term "first meeting" after the "annual election" seems to have been used in the statute of 1893 for the purpose of designating the time when the new order of things with respect to boards of health in villages should be instituted, rather than as specifying that new boards of health should be appointed in villages throughout the state by newly elected boards of trustees. It cannot be inferred that the Legislature regarded the various boards of trustees in office throughout the state in May, 1893, when the law went into effect, as incompetent or improper to appoint new boards of health. No suggestion of patronage to newly elected boards could have influenced the lawmaking power. Boards of health in villages were not new things because the law of 1885 had compelled villages to appoint them annually. The only practical change that the law of 1893 made was to put the boards on a business basis, by providing that the terms of members should be unequal, thus preventing the annual making up of a board of inexperienced men. The view that the outgoing board had the power to make the appointment and that the power so to do was not expressly given to the incoming board is strengthened by the fact that the term of office expired with the annual election. It cannot be presumed that the Legislature deliberately so fixed the power of appointment that all members should hold over the longest period of time before their successors could be appointed. Many villages throughout the state had special charters, and such was the case of the village of Mechanicville, whose board of trustees, elected on the first Wednesday of March, could not take office until the third Tuesday of that month. If the incoming board only had the power of appointment, and the terms of office of members of the board of health expired with the annual election, there would necessarily be a considerable number of days during which the old members must hold over before their successors could be appointed. Such a situation might not be at all serious; but the presumption is that, when the Legislature fixed the ending of the term, it intended to provide for the appointment to a new term as nearly on the expiration of the old as it reasonably could. In the practical administration of village affairs it makes no difference, for each board of trustees has, at the end of its term, a right of appointment, instead of at the beginning.

My conclusion is that Lenhardt's term had expired on the 8th day of March, 1909, and that the old board of trustees had the right to appoint his successor, and to increase the number of members of the board of health from three to five, and appoint the additional members and that, therefore, the legal board of health of the village of Mechanicville consists of Cassidy, who was regularly appointed to fill a vacancy caused by the resignation of a member of the same name, Bassett, Palmatier, Clarke, and Caron.

The only remaining question is whether, in a taxpayer's action, such as the present one, the invalidity of the appointment of certain persons who assume to act as members of the board of health and cast the village of Mechanicville in liability and thus waste the funds of the village can be determined. The defendants cite Greene v. Knox, 175 N. Y. 432, 67 N. E. 910, as a conclusive authority that a proceeding in quo warranto is necessary, and that the question of the validity of title to office cannot be determined in the present action. That was a taxpayer's action to restrain the payment of salaries of police captains, and the question arose upon demurrer to the complaint. The complaint alleged that the appointments of the police captains were regular in form, but that such appointments were invalid by reason of certain extrinsic facts. The decision turned upon the proposition that the validity of their appointments depended upon the establishing as true of these disputable extraneous facts. After discussing to what extent title to office might be inquired into in a taxpayer's action to restrain waste of public funds, Werner, J., says:

"We do not feel disposed to go further at present than to say that, in a case where the title to office depends, not upon admitted facts or indisputable records, or the plain letter or fair construction of a statute, but upon disputable and extraneous facts, the question cannot be tried in a taxpayer's action brought to restrain payment of salaries, but must be tried in quo warranto, and until so tried the payment of salaries cannot be enjoined."

In the present case there are no extraneous facts and no disputed facts. It is purely a question of law whether the old board of trustees had the right to make appointments and whether Lenhardt's term of office had expired. If the old board had such right, and his term had expired, then confessedly the new board had no power to make the appointment which it assumed to make; for the appointing and increasing power had been exhausted by the first board. The situation presented comes, it seems to me, directly within the exception pointed out in the above quotation from the opinion in Greene v. Knox; for the conclusion of the whole matter depends upon the construction of a statute and the examination of indisputable records. If I am right in my interpretation of the statute, it follows that Lenhardt, Finnigan, and Hickey were never legally appointed, and that they have no right to assume to act as the board of health of the village of Mechanicville.

A taxpayer may bring an action to prevent an "illegal act" (Peck v. Belknap, 130 N. Y. 394, 29 N. E. 977; Consol. Laws, c. 24, § 51; Laws 1909, c. 29), and it necessarily follows that he may also bring an action to restrain waste because an individual assumes to act illegally in an official capacity. If I am right in my conclusion, Lenhardt, Hickey, and Finnigan should be restrained from assuming to act as members of the board of health of the village of Mechanicville, and an order to that effect is granted.

Ordered accordingly.